UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| A&R BODY SPECIALTY, SKRIP'S AUTO BODY, FAMILY GARAGE and THE AUTO BODY ASSOCIATION OF CONNECTICUT on behalf of themselves and all others similarly situated,<br>　　　　Plaintiffs,<br><br>v.<br><br>PROGRESSIVE CASUALTY INSURANCE COMPANY and PROGRESSIVE DIRECT INSURANCE COMPANY,<br>　　　　Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | 3:07-cv-0929 (WWE) |

## **MEMORANDUM OF DECISION ON DEFENDANTS' MOTION**

This action arises from the claims of plaintiffs A&R Body Specialty, Skrip's Auto Body, Family Garage and the Auto Body Association of Connecticut, as well as all others similarly situated, that defendants Progressive Casualty Insurance Company and Progressive Direct Insurance Company violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stats. § 42-110b(a), for unfair and deceptive trade practices and were unjustly enriched through their actions. Plaintiffs seek statutory, common law and punitive damages as well as injunctive relief. Now pending before the Court is defendants' Request for Certification, Motion to Dismiss the Second Cause of Action for Failure to State a Claim Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion to Strike Certain Portions of the Complaint Pursuant to Federal Rule of Civil Procedure 12(f) (Docs. #32, 33).[1]

---

[1] On January 3, 2008, in response to plaintiffs' Amended Complaint, defendants filed a second Motion to Dismiss the Second Cause of Action of the Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(6) and Motion

1

## BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiffs A&R Body Specialty, Skrip's Auto Body and Family Garage are automobile physical damage repair shops licensed in Connecticut who have performed repairs on automobiles insured under defendants' policies. They assert that they have been paid unreasonably low labor rates by defendants and that defendants have improperly steered business away from them. Plaintiff Auto Body Association of Connecticut is a association of over one hundred automobile physical damage repair shops in Connecticut. Its claim is limited to the injunctive relief claim of count IV.

Defendants are a Connecticut-licensed insurer. They underwrite and issue automobile insurance policies in Connecticut to Connecticut residents. Defendants have a contractual relationship with a series of direct repair program shops ("DRPs"), in-house appraisers and claims handlers. Defendants encourage their insureds to utilize the repair services of the DRPs because DRPs agree to charge defendants rates set by defendants pursuant to contract with the DRPs. Defendants tell their insureds that defendants do not do business with non-DRPs, that a claim may not get paid if done through a non-DRP, that repairs are easier through DRPs as well as other benefits associated with DRPs.

Defendants further require that its insureds have all damages inspected and

---

Strike Certain Portions of the Complaint Pursuant to Federal Rule of Civil Procedure 12(f) (Doc. #43). This second motion did not include defendants' request to certify a question to the state Supreme Court. The Court has nonetheless ruled on that request as defendants' first motion remains before it.

assessed by appraisers employed by defendants.  These appraisers are not independent, and their practices are monitored by defendants.  In 2007, defendants opened two regional assessment center in Connecticut by which defendants can control the appraisal process.

Defendants' appraisers are prohibited from approving labor rates for repairs that are above certain rates set by defendants.  Defendants, however, represented to plaintiffs that they pay reasonable and market labor rates, knowing that they pay lower-than-market rates.  In addition, defendants represented to plaintiffs that their appraisers produce fair and unbiased appraisals, when they do not use independent appraisers and set strict parameters for their appraisers to follow.

Plaintiffs assert that such statements have caused them substantial injury in undermining the ability of plaintiffs to earn reasonable hourly labor rates.

## DISCUSSION

### I. Motion to Certify Question to Connecticut Supreme Court

Defendants first ask the Court to certify a question to the Connecticut Supreme Court pursuant to section 51-199b of the Connecticut General Statutes and Connecticut Practice Book Chapter 82.  Such certification is appropriate "if the answer may be determinative of an issue in pending litigation in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state."  Conn. Gen. Stat. § 51-199b(d).

Defendants contend that the issue on which certification is sought is one that the Connecticut Supreme Court has indicated that the state of the law is in flux.

Specifically, the Supreme Court has recently remarked that the "cigarette rule," a test to determine liability on claims of unfair methods of competition and unfair or deceptive acts or practices under CUTPA, may be of limited continuing vitality.  See Am. Car Rental, Inc. v. Commissioner of Consumer Protection, 273 Conn. 296, 305 n.6 (2005) ("[A] serious question exists concerning whether the cigarette rule remains the guiding rule utilized by the federal trade commission."); Votto v. Am. Car Rental, 273 Conn. 478, 484 n.3 (2005) ("We note that we recently have recognized that a question exists as to whether the cigarette rule remains the guiding rule utilized by the Federal Trade Commission."); Glazer v. Dress Barn, Inc., 274 Conn. 33, 82 n.34 (2005) ("[A] serious question exists concerning whether the cigarette rule remains the guiding rule utilized under federal law.").  In IndyMac Bank, F.S.B. v. Reyad, after the three decisions above, this Court followed the cigarette rule, remarking that it remains the controlling law on the issue.  IndyMac Bank, F.S.B. v. Reyad, 2006 U.S. Dist. LEXIS 55272, *15 n.8 (D. Conn. July 26, 2006).

The current state of the law, then, is that the cigarette rule governs this issue. Until such time as the Supreme Court abandons the rule, it remains the guiding principle for this Court to follow as state and federal courts in Connecticut still follow and apply it.  See, e.g., Dinoto v. Rockland Fin. Mtg. Co., LLC, 2007 U.S. Dist. LEXIS 62571 (D. Conn. Aug. 2, 2007) (applying cigarette rule); Edmands v. CUNO, Inc., 277 Conn. 425 (2006) (same).

As the Connecticut appellate courts and this Court are in agreement as to what test to apply at this point in time, the Court will deny defendants' request for certification.

## II. Motion to Dismiss Count II

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

Defendants argue that plaintiffs have not pleaded and cannot show that defendants' statements were the proximate cause of any harm to plaintiffs. Plaintiffs contend that defendants statements were deceptive and resulted in injury to them.

At this stage, dismissal is inappropriate as plaintiffs have met the pleading requirements of Rule 8 and pleaded a claim under CUTPA, Conn. Gen. Stats. § 42-110b(a), for deceptive practices.

As to defendants' challenge to plaintiffs' deceptive steering claim, plaintiffs have met the pleading requirements of Rule 8. The Court finds that, based on the Amended Complaint, there are sufficient allegations to demonstrate that defendants' steering of potential customers resulted in plaintiffs receiving less than market compensation for

their labors.

## III.     Motion to Strike Consent Decree

Defendants also move to have the Court strike plaintiffs' discussion of the 1963 Consent Decree from the Amended Complaint because there is no evidence that defendants were a party to it and that the Consent Decree cannot establish public policy governing the issues in this case.  Further, defendants argue that the Consent Decree covers horizontal agreements between competitors in the insurance industry, not the vertical agreements addressed in the Amended Complaint.

The 1963 Consent Decree is an agreement between the United States Justice Department and three industry trade associations representing many companies within the insurance industry.  It is unclear if defendants were represented by those industry trade associations.  Plaintiffs have introduced it in order to show the public policy relevant to the issues in this case.  Defendants argue that (1) they were not parties to it; (2) a consent decree cannot establish public policy; and (3) the conduct addressed in the Consent Decree - agreements between competitors fixing certain rates - is different than the conduct alleged by plaintiff - a dictate by an insurance company that it will not reimburse above a certain rate.

Rule 12(f) of the Federal Rules of Civil Procedure provides that, upon motion, a court may strike "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" from a pleading.  In considering a motion to strike, the court does not examine the merits of the action, but merely determines whether any matter contained in the pleading itself was improperly included.  Because pleadings are to be construed liberally, motions to strike generally are not favored and will be granted only

upon a showing that the allegations in question have no possible bearing on the subject matter of the litigation.  Schramm v. Krischell, 84 F.R.D. 294, 299 (D. Conn. 1979).

After careful review, defendants' motion to strike should be denied.  While the Court is not yet convinced of the relevance of the Consent Decree for the reasons outlined by defendants, construing the complaint liberally, it is not prepared to strike it based on the thin factual record available at this time.  Lipsky v. Commonwealth United Corp., 551 F.2d 887, 893 (2d Cir. 1976) ("[O]rdinarily neither a district court nor an appellate court should decide to strike a portion of the complaint - on the grounds that the material could not possibly be relevant - on the sterile field of the pleadings alone."). Until such time as the parties brief the various facts and issues arising from the Consent Decree, the Court is unprepared to rule on its relevance and admissibility. Therefore, the Court will deny defendants' motion to strike without prejudice.

## CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion (Docs. #32, 33, 43).

Dated at Bridgeport, Connecticut, this 27th day of May, 2008.

/s/
Warren W. Eginton
Senior United States District Judge