```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT


A&R BODY SPECIALTY AND              :
COLLISION WORKS, INC.,              :
FAMILY GARAGE, INC. and             :
THE AUTO BODY ASSOCIATION           :
OF CONNECTICUT on Behalf            :
of Themselves and all               :
Others Similarly Situated           :
                                    :
                                    :
v.                                  :  CIV. NO. 3:07CV929 (WWE)
                                    :
PROGRESSIVE CASUALTY                :
INSURANCE COMPANY and               :
PROGRESSIVE DIRECT INSURANCE        :
COMPANY                             :
                                    :
                                    :
```

                     RULING ON CROSS-MOTIONS

This class action is brought by plaintiffs, A&R Body Specialty, Family Garage and the Auto Body Association of Connecticut, on behalf of themselves and all other licensed auto body repairers in the State of Connecticut who have performed repairs during the class period for any person with automobile insurance from Progressive Insurance Group, Progressive Northeast Insurance Company, Progressive Casualty Insurance Company, Progressive Direct Insurance Company (collectively "Progressive"). Plaintiffs allege that defendant, Progressive, illegally suppressed labor rates paid to auto body repair shops and illegally steered its insured to a network of preferred body

1

shops it controls under its direct repair program. ("DRPs"). In Counts I and II, plaintiffs seek recovery under the Connecticut Unfair Trade Practices Act ("CUTPA"). In Count III, plaintiff seeks to recover under the Connecticut Unfair Sales Practice Act and in Count IV plaintiff claims tortious interference with business expectancy. [doc. #172].[1]

## CROSS-MOTIONS [doc. ##208 209]

The parties filed cross-motions regarding defendants' request to permit communication and contact with putative class members. On April 27, 2012, plaintiffs filed a Motion to Preclude Informal Contact with Absent Class Members [doc. #208], and defendants filed a Motion to Permit Defendants' Communications with Putative Class Members. [doc. #209]. On July 20, 2012, in light of the November 16, 2011 Connecticut Ethics Panel Opinion [CBA Informal Op. 2011-09] on contacting members of proposed classes, the Court permitted supplemental briefing. The defendants filed a supplemental brief on July 27, 2012 [doc. #234].

## PLAINTIFFS' MOTION [doc. #208]

Plaintiffs seek to preclude the defendant from contacting body shop owners in Connecticut, who are absent members of the putative class in this case. Plaintiffs believe contact should

---

[1] There is a pending motion to dismiss the Second Amended Complaint. [doc. #215].

be precluded for two reasons: the members of the putative class in this case are represented by plaintiffs' counsel in a similar action certified in the Connecticut Superior Court and plaintiffs believe that defendant's efforts to informally contact absent class members are an attempt to go around the Court's order precluding formal discovery from absent class members.

## DEFENDANTS' MOTION [doc. #209]

Defendants seek leave to communicate with putative class members. Defendants argue there is no justification on the record to restrict defendants' communications with putative class members. Defendants have represented to the Court that they will not attempt to dissuade class participation or seek waivers of liability. Defendants also argue that while courts have restricted communication with absentee class members only where the record justifies, here, the Court has yet to express an affirmative intent to certify the proposed class and furthermore, "the record contains no evidence of malfeasance on the part of Progressive or any likelihood of abuses."

## DISCUSSION

Federal Rule of Civil Procedure 23(d)(1)(C) gives the Court discretion to impose conditions on the parties in class action suits. See Fed. R. Civ. P. 23(d)(1)(C). This includes regulating

3

communications between counsel and putative class members. Id.

On November 16, 2011, consistent with federal case law and American Bar Association opinions, a Connecticut Ethics Opinion determined that it is ethical for opposing counsel to contact putative class members prior to class certification. See CBA Informal Op. 2011-09.

> The mere fact that an attorney has filed an action and unilaterally asked the court to appoint him or her as the class' attorney, does not -- [without more] – [establish an] attorney-client relationship [between] [an] attorney and members of the proposed class such that the proposed class members cannot be contacted by attorneys for defendants in the action. . . putative class [members] are not [represented] until the class is certified.  [There are] legitimate reasons for counsel to contact putative class members regarding the facts that are the subject matter of the litigation.

CBA Informal Op. 2011-09.  The opinion elaborated that, consistent with the Supreme Court decision in Gulf Oil v. Bernard, counsel may seek to place reasonable restrictions on this contact. Id.

There is case law predating the Connecticut Ethics Opinion which permits contact with putative class members with some limitations. The issue was addressed generally by the U.S. Supreme Court:

> Class actions serve an important function in our system of civil justice.  They present, however, opportunities for abuse as well as problems for courts and counsel in the

4

> management of cases.  Because of the
> potential for abuse a district court has
> both the duty and the broad authority to
> exercise control over a class action and to
> enter appropriate orders governing the
> conduct of counsel and parties.  But this
> discretion is not unlimited, and indeed is
> bound by the relevant provisions of the
> Federal Rules.

Gulf Oil Co. v. Bernard, 452 U.S. 89, 99-100 (1981). While Gulf Oil looked to parties' communication with putative class members, it did not specifically address limits to communication permitted between defendants' counsel and putative class members. However, the Second Circuit has followed certain Gulf Oil principles in deciding whether to limit communications by counsel with putative class members. See Austen v. Catterton Partners V., LP, 831 F. Supp. 2d 559, 565 (D. Conn. 2011). Orders limiting communications between parties and putative class members must "be based on a clear record and specific findings that reflect a weighing of the need for limitation and the potential interference with the rights of the parties." Austen, 831 F. Supp. 2d at 565 (citing Gulf Oil, 452 U.S. at 101). Orders should "'limit[] speech as little as possible, consistent with the rights of the parties under the circumstances.'" Austen, 831 F. Supp. 2d at 565 (citing Gulf Oil, 452 U.S. at 102). "[T]he Court must pay 'attention to whether [a particular] restraint is justified by a likelihood of serious abuses.'" Austen, 831 F. Supp. 2d at 565 (citing Gulf

5

Oil, 452 U.S. at 104). Communications between defendants and putative class members "are not abusive communications that warrant limitations absent indications in the record of the need for limitations." Austen, 831 F. Supp. 2d at 565.

    Plaintiffs contend that defendants' communication with putative class members in situations where there is an ongoing relationship between the putative class members and the defendants has the potential for coercion and can lead to abuse. [doc. #208]. "Where there is a relationship that is inherently coercive, the court does not need to make a finding that a particular abuse has occurred.  The court, however, must still require a clear record of threatened abuses." Jenifer v. Delaware solid Waste Authority, No. Civ.A. 98-270 MMS, CIV.A. 98-565 MMS, 1999 WL 117762, at *4 (D. Del. Feb. 25, 1999)(finding no record to show that communication between defendants and putative class members was misleading or coercive nor that class members would be threatened or coerced into foregoing any claims in the present lawsuit). "The test for coercion is whether the conduct somehow overpowers the free will or business judgment of the potential class members." Jenifer, 1999 WL 117762, at *5 (citing Mobilificio San Giacomo S.p.A. v. Stoffi, No. C.A. 96-415-SLR, 1998 WL 125536, at *9 (D. Del. Jan. 29, 1998)). See Hampton Hardware, Inc. v. Cotter & Co., Inc., 156 F.R.D. 630, 633 (N. D. Tex. 1994)(finding coercion and

prohibiting further contact after defendant warned putative class members of the potential cost to them, specifically advised not the participate in the lawsuit and told them that by participating in the suit, they would "suing themselves").

Furthermore, "[b]oth parties need to be able to communicate with putative class members- if only to engage in discovery regarding issues relevant to class certification- from the earliest stages of class litigation." Austen, 831 F. Supp. 2d at 567. Here, plaintiff presents no record of any threats or coercion to the putative class members. "Class members may therefore feel pressured to cooperate or speak with Defendants, and may not be aware of their right to refrain from doing so absent intervention by counsel." [doc. #208]. The Court will permit defendants to contact putative class members, but will place restrictions on the defendants as to their communication with the putative class members to ensure that no abuse occurs. Given that, by initially seeking the Court's permission to contact putative class members, defendants here have yet to initiate any such contact, the Court grants permission to plaintiffs to bring forth a motion without prejudice should evidence of coercion or threats later be revealed.

This case distinguishes itself from others because it involves a putative class nearly identical to the class

represented by plaintiffs' counsel in a prior suit.[2]  This lends credence to the expectation that that the proposed class in this case will be certified.  However, this court has recently permitted defendants to contact putative class members in a situation where class certification was nearly certain to be granted.  See Austen, 831 F. Supp. 2d at 561.  Because the class has yet to be formed, the class members are not yet clients of the plaintiffs' counsel and should be treated no differently from any other class pre-certification, regardless of past representation by plaintiffs' defense counsel.

    Defendants' motion is granted with the following restrictions.

- Defense counsel wishing to contact putative class members must explicitly inform the putative class member that he or she is an attorney and must also identify the party that he or she is representing in the suit. Defense counsel should stop all efforts to engage any putative class member who does not wish to speak to counsel.

- Defense counsel must ask the putative class members, at the outset of the communication, whether they are already represented by counsel and, if not, whether they would like

---

[2] See Artie's Auto Body, Inc. et al. v. The Hartford Fire Insurance Company, No. X08-CV-030196141S, 2006 WL 2730143 (Conn. Super. Ct. August 30, 2006) (ruling granting class certification).

to consult with an attorney before engaging in further communication.

- Defense counsel shall not communicate with putative class members either directly or indirectly about settling any claims related to the claims asserted by plaintiffs in this case.

- Defense counsel shall keep detailed lists of all the putative class members they contact prior to certification and shall submit those lists to the Court when a class certification motion is eventually filed in this case.

- Plaintiffs' counsel are granted permission to notify members of the putative class that they are under no obligation to speak with defendants' counsel about the case and are encouraged to seek the advice of an attorney before doing so.

See Doc. #208 at 9 (plaintiff's request for restrictions are the same restrictions placed by the court in Austen v. Catterton, 2011 WL 1374035, at *10).

## CONCLUSION

Accordingly, defendant's motion **[doc. #209]** is **GRANTED** in part **and DENIED** in part.  Plaintiff's motion **[doc. #208]** is **GRANTED** in part and **DENIED** in part.  This is not a recommended ruling.  This is a discovery ruling and order which is reviewable pursuant to the "clearly erroneous" statutory

standard of review.  28 U.S.C. § 636 (b)(1)(A); Fed. R. Civ. P. 6(a), 6(e) and 72(a); and Rule 2 of the Local Rules for United States Magistrate Judges.  As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 5th day of September 2012.


_____/s/_____

HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE