UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| A&R BODY SPECIALTY, FAMILY GARAGE : <br> and THE AUTO BODY ASSOCIATION : <br> OF CONNECTICUT on behalf of themselves : <br> and all others similarly situated, : <br>     Plaintiffs, : <br> : <br> v. : <br> : <br> PROGRESSIVE CASUALTY INSURANCE : <br> COMPANY and PROGRESSIVE DIRECT : <br> INSURANCE COMPANY, : <br>     Defendants. : | 3:07-cv-0929 (WWE) |

## MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO DISMISS

This action arises from the claims of the plaintiffs, A&R Body Specialty, Family Garage and the Auto Body Association of Connecticut, as well as all others similarly situated, that the defendants Progressive Casualty Insurance Company and Progressive Direct Insurance Company violated the Connecticut Unfair Sales Practices Act ("CUSPA"), Connecticut Unfair Trade Practices Act ("CUTPA"), tortiously interfered with business expectancies, and were unjustly enriched through their actions. Plaintiffs seek statutory, common law and punitive damages as well as injunctive relief. Now pending before the Court is defendants' motion to dismiss plaintiffs' second amended complaint. For the following reasons, the motion to dismiss will be denied.

### BACKGROUND

For purposes of ruling on a motion to dismiss, the Court accepts all allegations of the complaint as true.

Plaintiffs A&R Body Specialty and Family Garage are automobile physical

1

damage repair shops licensed in Connecticut who have performed repairs on automobiles insured under defendants' policies. They assert that they have been paid unreasonably low labor rates by defendants and that defendants have improperly steered business away from them. Plaintiff Auto Body Association of Connecticut is an association of more than one hundred automobile physical damage repair shops in Connecticut.

Defendants are nationwide insurers selling automobile insurance to Connecticut residents. Defendants have a contractual relationship with a series of Direct Repair Program ("DRPs") shops, in-house appraisers and claims handlers. Defendants encourage their insureds and claimants to utilize the repair services of the DRPs because DRPs agree to charge defendants rates set by defendants pursuant to a contract. Defendants inform their insureds and claimants, inter alia, that they will not conduct business with non-DRP shops and that a claim may not get paid if performed by a non-DRP.

Defendants permit a limited number of repair shops to participate in its DRP. To participate in the DRP, the repair shop must agree to work at artificially suppressed labor rates set by defendants and to adopt procedures for utilization of used parts and repair of vehicles subject to criteria dictated by defendants rather than repair professionals. Defendants write all estimates and supplements for work performed at its DRP shops and monitor the performance of all participating shops. If a participating repair shop does not perform according to defendants' strict criteria, it is subject to discipline or termination from the DRP.

Defendants require that insureds and claimants have all damages inspected and assessed by appraisers employed by defendants.  These appraisers are not independent, and their practices are monitored by defendants.  In 2007, defendants opened two regional assessment centers in Connecticut by which defendants can control the appraisal process.

Defendants' appraisers are prohibited from approving labor rates for repairs that are above certain rates set by defendants.  Defendants, however, represented to plaintiffs that they pay reasonable and market labor rates, knowing that they pay lower-than-market rates.

In an attempt to gain control over the repair process, defendants commenced the "Concierge Program" or "All Claims Service Center Program" with two facilities designed to appraise damages, transport vehicles to a DRP shop, and provide rental car services for insureds.  Defendants represent that the Concierge Program will take care of the consumer and that the DRP will provide the consumer with quicker service.  However, plaintiffs allege that there is no difference in the speed with which an estimate is performed by a DRP or non-DRP shop.

Plaintiffs allege that defendants' practices violate (1) the public policy expressed in the Federal Consent Decree (the "Consent Decree") that resolved an action brought by the United States Justice Department in 1963 that sought to enjoin insurance companies from fixing, establishing, maintaining or otherwise controlling the prices to be paid for the appraisal of damage or repair charges; (2) the public policy expressed in guidelines issued by the Connecticut Department of Insurance for determining reasonable labor rates; and (3) various sections of the Connecticut General Statutes.

Plaintiffs assert further that defendants engage in a concerted effort to disguise and misrepresent the fact that it pays unreasonably low labor rates resulting from insurer pressure, and that its appraisers must follow strict parameters that dictate the labor rates, and use of aftermarket and used parts. Plaintiffs maintain that defendants mandate repair processes that do not comply with appropriate standards. The negative impact of defendants' conduct on the quality of the repairs through its Concierge Program was confirmed in J.D. Power's 2007 Insurance Claims Study.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

With regard to allegations of fraud or fraudulent conduct, a plaintiff must comply with the higher pleading standard required by Federal Rule of Civil Procedure 9. In order to satisfy Rule 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the

statements or omissions were made; and (4) explain why the statements or omissions were fraudulent. Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). A plaintiff may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). The purpose of the specificity requirement is: (1) to ensure that a complaint provides defendant with fair notice of plaintiff's claim; (2) to safeguard defendant's reputation from improvident charges; and (3) to protect defendant from a strike suit. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

In a ruling dated May 28, 2008, this Court denied a motion to dismiss that argued against the viability of plaintiffs' CUTPA claim based on deceptive acts and unjust enrichment claims. The defendants had not moved to dismiss the asserted CUTPA violation based on unfair trade practices. In the instant motion to dismiss, defendants argue that all of plaintiffs' claims should be dismissed under the plausibility standard articulated in Iqbal and Twombly.

Count One: Violation of CUTPA Based on Unfair Practices

Plaintiffs allege that defendants' pricing, appraisal and steering practices constitute unfair practices in violation of CUTPA.

Defendants argue that plaintiffs' claim of CUTPA violation based on unfair practices does not meet the plausibility requirement. CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a). The Connecticut Supreme Court has adopted the following factors known as

5

the "cigarette rule" to determine whether a trade practice is unfair or deceptive:  "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise —  whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).  In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree.  Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).

In this instance, plaintiff has provided allegations indicating that defendants' conduct may violate the public policy articulated in the 1963 Consent Decree, the Connecticut insurance regulations and the Connecticut statutes.  Plaintiffs have also alleged that they sustained economic injury as a result of losing prospective customers or suppressed labor rates.  Upon review, the Court finds that plaintiffs have stated a plausible CUTPA claim.  The Court will deny the motion to dismiss as to Count One.

### Count Two: Violation of CUTPA Based on Deceptive Practices

This Court has previously held that plaintiffs stated a valid CUTPA claim based on deceptive practices.  However, the Court will reconsider its ruling as to the CUTPA violation based on deceptive practices to the extent that such claim must meet the higher pleading standard of Federal Rule of Civil Procedure 9.

6

A CUTPA claim, which requires no proof of the falsity of misrepresentation, is not generally required to meet Rule 9 except if the claim is based on fraud allegations. In re Cablevision Consumer Litigation, 864 F. Supp. 2d 258, 268 (E.D.N.Y. 2012); see also Assoc. Inv. Co. Ltd. Partnership v. Williams Assocs. IV, 230 Conn. 148, 158 (1994). Rule 9 pleading is required when a misrepresentation was made for the purpose of inducing action. Milo v. Galante, 2011 WL 1214769, *8 (D. Conn. 2011).

To establish that defendants engaged in a deceptive practice, plaintiffs must allege that (1) defendants made a material representation, omission, or other practice likely to mislead consumers and affect their decisions, and (2) consumers interpreted the message reasonably under the circumstances. Caldor, Inc. v. Heslin, 215 Conn. 590, 597 (1990). Plaintiffs allegations are susceptible to such an interpretation, and the Court will assume for purposes of this ruling that the Rule 9 standard is appropriate.

The complaint asserts that defendants have made false representations to body shops that they would pay reasonable market-based labor rates and that their appraisers would perform fair and unbiased appraisals. Further, plaintiffs allege that defendants have purposely made misrepresentations to their insureds or claimants about the quality and cost of their auto body repair services to discourage their insureds or claimants from patronizing non-DRP auto body repair shops. Plaintiffs maintain further that defendants have made such misleading representations by, inter alia, informing policyholders and claimants that DRP shops will provide quicker service or that it is easier to have repairs performed at these shops; that defendants provide a lifetime guarantee on repairs performed at DRP shops in a way that conveys that plaintiffs and other similar auto body shops do not offer a similar guarantee; and that a

7

delay will occur if defendants' insureds and claimants do not use a DRP shop.

Defendants maintain that plaintiffs' allegations do not establish that any deceptive acts occurred.  They point out that plaintiffs have not alleged that the non-DRP shops offer quicker service; that plaintiffs or other similar auto body shops offer life time guarantees similar to that of defendants; or that defendants' alleged representations are likely to have a material impact upon the claimant's choice of repair shop.  As to the alleged misrepresentation concerning fair labor rates and reasonable appraisals, defendants maintain that their representations relative to labor rates and appraisals are consistent with Connecticut law.  Defendants also complain that plaintiffs' allegations fail to identify individuals to whom the allegedly deceptive statements were made and that plaintiffs have failed to allege an ascertainable loss.

Upon review, the Court finds that the claim is alleged with adequate specificity.  The complaint only identifies the individuals to whom the alleged statements were made as defendants' insureds or claimants; however, such individuals are not defendants who would need to provide a defense to the allegations.  See Gold v. Fields, 1993 WL 212672, *7 (S.D.N.Y. 1993) (Rule 9 aims to prevent non-specific allegations that fail to differentiate among multiple defendants).  Further, the identities of defendants' insureds and claimants are known to defendants.  The complaint details the appraisal process; the asserted methods of maintaining certain standards for the appraisals and labor rates; the Concierge Program; the waiver required to participate in the Concierge Program, how the "life time guarantee" requires the insured to return to a DRP shop; and the harm, including economic loss to plaintiffs, caused by the alleged deceptive practices.  The inference that plaintiffs' shops or non-DRP shops may provide

equal service or guarantees on their service is implicit to plaintiffs' pleadings.  The allegations are sufficiently detailed to ensure that defendants have fair notice of the claims, that defendants' reputation is safeguarded from improvident charges, and that defendants are protected from a strike suit.   The Court will assess whether the defendants made deceptive representations and are liable under CUTPA on summary judgment.

      Count Three: Violation of CUSPA

Defendants assert that plaintiffs have failed to allege a plausible CUSPA claim.  Defendants assert that plaintiffs must plead the CUSPA violation with particularity pursuant to Federal Rule of Civil Procedure 9.   The CUSPA allegations incorporate the allegations of the CUTPA violation based on deceptive practices.  Accordingly, the Court will assume for purposes of this ruling that the Rule 9 pleading standard applies.

CUSPA provides: "A person likely to be damaged by a deceptive trade practice of another may be granted an injunction enjoining such practice under the principles of equity and on terms that the court considers reasonable."  Conn. Gen. Stat. Section 42-115e(a).  Consistent with discussion relevant to the CUTPA claim based on deceptive practices, the Court finds that plaintiffs' allegations satisfy the purposes of Rule 9's specificity requirement.

Defendants argue further that plaintiffs' allegations fail to establish irreparable harm and or that plaintiffs can be remedied by injunctive relief, which is the only remedy available under CUSPA.   However, plaintiffs have alleged that they are harmed irreparably by defendants' continual steering away of customers and suppression of the labor rates.  At this stage in the proceeding, the Court cannot determine as a matter of

law that plaintiffs' CUSPA claim cannot be remedied by injunctive relief.

<u>Count Four: Tortious Interference with Business Expectancy</u>

Plaintiffs allege that defendants tortiously interfered with plaintiffs' business expectancy with respect to (1) defendants' insureds and claimants who had car repairs performed at one of plaintiffs' shops, and (2) customers who were steered away from plaintiffs' shops.  Plaintiffs allege that "the members of the class have a continuing expectation of conducting repairs for customers" on claims paid by defendants because licensed drivers in Connecticut are required to obtain auto collision insurance, and virtually all collision repair is paid by insurance companies.  Defendants maintain that plaintiffs' allegations lack the requisite specificity required to survive this motion to dismiss.

In order to sustain a cause of action for tortious interference with business expectancy, plaintiffs must allege that (1) a business relationship existed between the plaintiffs and another party; (2) defendants knew of and intentionally interfered with the business relationship; and (3) as a result of the interference, plaintiffs suffered an actual loss.  <u>Hi-Ho Tower, Inc. v. Com-Tronics, Inc.</u>, 255 Conn. 20, 27 (2000).  Plaintiffs must also plead allegations that defendants acted maliciously, which means in this context "intentional interference without justification."  <u>Energy Solutions, Inc. v. Realgy, LLC</u>, 114 Conn. App. 262, 272 (2009).  Plaintiffs must plead some improper motive or means.  <u>Daley v. Aetna Life & Cas. Co.</u>, 249 Conn. 766, 806 (1999).

Defendants complain that plaintiffs have failed to identify specific repair shops, employees or agents of defendants, individuals with whom defendants interfered, or any specific communication that caused the tortious interference.   An existing or

10

"reasonable prospect" of such contractual or business relationships with customers or prospective customers is required for the business relationship requirement of a tortious interference with business expectancy claim.  Hi-Ho Tower, Inc, 255 Conn. at 29 n.8.

In this instance, plaintiffs have adequately stated that they had relationships with third parties, insureds and claimants who used their services and those customers who were unlawfully steered away.  Plaintiffs have alleged that defendants knew of these relationships because defendants paid the claims for such repairs.   The Court finds that these allegations satisfy the first two requirements of plaintiffs' tortious interference claim.

Defendants maintain that plaintiffs' allegations have not established that defendants acted with malice.   Plaintiffs have asserted that defendants have improperly suppressed labor rates and unlawfully steered prospective customers into their programs.  Plaintiffs also allege that defendants' conduct violates the public policies set forth in the 1963 Consent Decree, Connecticut insurance regulations and Connecticut statutes.  The malice requirement is satisfied.

Defendants argue that plaintiffs have failed to allege an "actual loss."  However, plaintiffs have alleged that they lost business, revenue and profits and that damages may be assessed pursuant to defendants' appraisal data.  The Court may better assess plaintiffs' claim to actual loss on a motion for summary judgment.  The motion to dismiss will be denied as to the tortious interference claim.

Count Five: Unjust Enrichment

Plaintiffs allege that defendants have been unjustly enriched due to failure to pay plaintiffs and class members for automobile repairs.  Defendants contend that the

allegations indicate that plaintiffs were paid pursuant to contracts with defendants and that plaintiffs accepted the payments based on the labor rates applied by defendants.

Unjust enrichment is an equitable remedy that applies where a plaintiff cannot recover under an express contract.  Kelly v. Noble Environmental Power, LLC, 2012 WL 753750, *6 (Conn. Super. 2012).  The existence of a contract precludes recovery on a claim of unjust enrichment.  Lack of recovery under a contract is a precondition to recovery based on unjust enrichment.  300 State Street, LLC v. Hanafin, 140 Conn. App. 327, 2013 WL 149899, *2 (Jan. 22, 2013).

Plaintiffs maintain that they seek monies that are not fully addressed by contract. It is well established that plaintiffs may plead in the alternative for recovery under contract or unjust enrichment.  See Fed. R. Civ. P. 8(d)(2); Stein v. Horton, 99 Conn. App. 477, 485 (2007) (parties may plead in alternative claims for breach of contract and unjust enrichment but are entitled to only single recovery).  The motion to dismiss will be denied on this claim.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss (doc. #215).

Dated at Bridgeport, Connecticut, this 27th day of February 2013.


                                                  /s/
                                    Warren W. Eginton
                                  Senior United States District Judge