UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

A&R BODY SPECIALTY AND          :
COLLISION WORKS, INC.,          :
FAMILY GARAGE, INC. and         :
THE AUTO BODY ASSOCIATION       :
OF CONNECTICUT on Behalf        :
of Themselves and all           :
Others Similarly Situated,      :
                                :
                                :
v.                              :    CIV. NO. 3:07CV929 (WWE)
                                :
PROGRESSIVE CASUALTY            :
INSURANCE COMPANY and           :
PROGRESSIVE DIRECT INSURANCE    :
COMPANY.                        :
                                :
                                :

DISCOVERY RULING

Defendants, Progressive Casualty Insurance Company and

Progressive Direct Insurance Company (collectively

"Progressive"), have submitted for an in camera review certain

documents that have been redacted and/or withheld based on

claims of the attorney-client privilege and/or work product

protection.  The challenged documents, 188 in total, contain

communications between (a) Progressive and counsel for the

Insurance Association of Connecticut ("IAC"), Robert Kehmna and

Susan Giacalone; (b) Progressive and counsel retained for

lobbying on Progressive's behalf, P. J. Cimini; and (c)

Progressive's in-house counsel and employees.  The Court has

considered the parties' briefs[1] and, conducted an in camera

---

[1] During an October 10, 2012 telephone conference, the Court directed
defendants to submit the challenged documents for an in camera review, along
with a letter brief.  On January 24, 2013, defendants submitted a letter
brief, privilege log, and the challenged documents.  Plaintiffs responded via

review of the documents at issue. For the reasons that follow, the Court overrules in part and sustains in part the assertions of the attorney-client privilege and work product protection for the challenged documents.

I.      **BACKGROUND**

This action is brought by plaintiffs, A&R Body Specialty, Family Garage and the Auto Body Association of Connecticut, on behalf of themselves and all other licensed auto body repairers in the State of Connecticut who have performed repairs during the class period for any person with automobile insurance from Progressive.  Plaintiffs allege that defendants illegally suppressed labor rates paid to auto body repair shops and illegally steered their insured to a network of preferred body shops it controls under its direct repair program. In Counts I and II, plaintiffs seek recovery under the Connecticut Unfair Trade Practices Act ("CUTPA").  In Count III, plaintiffs seek to recover under the Connecticut Unfair Sales Practice Act and in Count IV plaintiffs claim tortious interference with business expectancy. [Doc. # 172].

The IAC is a voluntary trade association that represents insurers conducting business in Connecticut. [Doc. # 256-2, Robert Kehmna Aff. ("Kehmna Aff."), at ¶ 3].  The IAC's main function "is to provide government and public relations services for the insurance industry and to advance the legislative and regulatory agenda and lobbying efforts of [its] members." [Id.].

letter brief the next day.  In making this ruling, the Court also considered applicable arguments set forth in the briefing on the Motions to Quash and/or for Protective Order [Doc. ## 245, 257].

Mr. Kehmna and Ms. Giacalone "regularly provide counsel [] on legal matters that arise during the course of [the IAC's] legislative and lobbying efforts." [Id. at ¶ 9].

## II.   LEGAL STANDARD

### A.   Attorney-Client Privilege

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996). The privilege is triggered by a request for legal as opposed to business advice.  In re Grand Jury Subpoena, 731 F.2d 1032, 1037 (2d Cir. 1984). The Court construes the privilege narrowly because it renders relevant information undiscoverable; we apply it "only where necessary to achieve its purpose." Fisher v. United States, 425 U.S. 391, 403 (1976); see In re Grand Jury Investigation, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); United States v. Int'l Bd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am., AFL-CIO, 119 F.3d 210, 214 (2d Cir. 1997).

The Court uses a three-pronged standard for determining the legitimacy of an attorney-client privilege claim.  A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for

3

the purpose of obtaining or providing legal advice. <u>In re County of Erie</u>, 473 F.3d 413, 419 (2d Cir. 2007); <u>Constr. Prods. Research, Inc.</u>, 73 F.3d at 473.  The privilege also "protects from disclosure communications among corporate employees that reflect advice rendered by counsel to the corporation."  <u>Bank of Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 442 (S.D.N.Y. 1995) (citations omitted); <u>BNP Paribas Mortg. Corp. v. Bank of America, N.A.</u>, Nos. 09 Civ. 9783(RWS), 2013 WL 2322678, at *11 (S.D.N.Y. May 21, 2013).

   B. **<u>Work Product Rule</u>**

   "Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need. <u>United States v. Adlman</u>, 68 F.3d 1495, 1501 (2d Cir. 1995); Fed.R.Civ.P. 26(b)(3)). The doctrine establishes a zone of privacy for strategic litigation planning and prevention of one party piggybacking on the adversary's preparation.  <u>See</u> <u>United States v. Nobles</u>, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his

4

client's case."); <u>Hickman v. Taylor</u>, 329 U.S. 495, 516, 67 S.Ct. 385, 396, 91 L.Ed. 451 (1947) (Jackson, J., concurring) (work product rule intended to insure that one side does not "perform its functions ... on wits borrowed from the adversary").  "[A]s a general matter public relations advice, even if it bears on anticipated litigation, falls outside the ambit of protection of the so-called 'work product' doctrine embodied in Rule 26(b)(3), Fed. R. Civ. P." <u>Calvin Klein Trademark Trust v. Wachner</u>, 198 F.R.D. 53, 55 (S.D.N.Y. 2000).

### C. **Common Interest Rule**

The common interest rule, also known as the joint defense privilege, "extends the attorney client privilege to privileged communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege." <u>TIFD III-E Inc., v. United States</u>, 223 F.R.D. 47, 50 (D. Conn. 2004) (citing <u>United States v. Schwimmer</u>, 892 F.2d 237 (2d Cir. 1989)).  "Although the parties need not be actively involved in litigation", <u>TIFD III-E, Inc.</u>, 223 F.R.D. at 50, "there must be a commonality of interest amongst the members [] and each party must reasonably understand that the communications are provided in confidence." <u>Cendant Corp v. Shelton</u>, Civil No. 3:06CV00854(AWT), 2007 WL 2460701, at *2 (D. Conn. Aug. 24, 2007) (citation omitted). "A community of interest exists among different persons or separate corporations where they have an identical legal interest… The key consideration is that the nature of the interest be identical,

not similar, and be legal, not solely commercial." In re
F.T.C., No. M18-304 (RJW), 2001 WL 396522, at *3 (S.D.N.Y. April
19, 2001) (citation omitted); see also TIFD III-E, Inc., 223
F.R.D. at 50 (citation omitted) ("The rule does not encompass a
joint business strategy that merely happens to include as one of
its elements a concern about litigation.").  "The Second Circuit
adheres to a strict interpretation of the common interest rule
such that 'only those communications made in the course of an
ongoing common enterprise and intended to further the enterprise
are protected.'" Cendant Corp., 2007 WL 396522, at *2 (quoting
U.S. v. Salvagno, 306 F. Supp. 2d 258, 271 (N.D.N.Y. 2004)); see
also In re F.T.C., 2001 WL 396522, at *4 (citing United States
v. Weissman, 195 F.3d 96, 100 (2d Cir. 1999)) ("[T]he Second
circuit has warned that expansions of the attorney-client
privilege under the common interest rule should be 'cautiously
extended'").

### D.  **Attorneys Acting as Lobbyists**

"The fact that a lawyer occasionally acts as a lobbyist
does not preclude the lawyer from acting as a lobbyist and
having privileged communications with a client who is seeking
legal advice." In re Grand Jury Subpoenas, 179 F. Supp. 2d 270,
285 (S.D.N.Y. 2001).  However, "if a lawyer happens to act as a
lobbyist, matters conveyed to the attorney for the purpose of
having the attorney fulfill the lobbyist role do not become
privileged by virtue of the fact that the lobbyist has a law
degree or may under other circumstances give legal advice on

6

matters that may also be the subject of the lobbying efforts."
Id. (quoting Edna Selan Epstein, The Attorney-Client Privilege &
the Work Product Doctrine 239 (2001)); see also U.S. Postal
Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 164
(E.D.N.Y. 1994) ("Lobbying conducted by attorneys does not
necessarily constitute legal services for purposes of the
attorney-client privilege.").  Moreover, "Summaries of
legislative meetings, progress reports, and general updates on
lobbying activities do not constitute legal advice and,
therefore, are not protected by the work-product immunity."  P.
& B. Marina, Ltd. P'ship v. Logrande, 136 F.R.D. 50, 59
(E.D.N.Y. 1991).  "If a lawyer who is also a lobbyist gives
advice that requires legal analysis of legislation, such as
interpretation or application of the legislation to fact
scenarios, that is certainly the type of communication that the
privilege is meant to protect."  Robinson v. Texas Auto. Dealers
Ass'n, 214 F.R.D. 432, 446 (E.D. Tex. 2003), vacated in other
part, No.03-10860, 2003 WL 21911333, at *1 (5th Cir. July 25,
2003); see also Weissman v. Fruchtman, No. 83 Civ. 8958 (PKL),
1986 WL 15669 , at *15 (S.D.N.Y. Oct. 31, 1986) (finding
attorney-client privilege properly invoked where client sought
legal advice on pending legislation).

III. __DISCUSSION__

    **A. Redacted Documents**

        ***1. Protected Redactions***

            a. Obtaining or Providing Legal Advice

The Court finds that the redactions on the following documents are protected by the attorney-client privilege because the redactions reflect confidential requests for legal advice from Progressive's employees to Progressive's in-house counsel: 3, 22, 35, 41, 45, 47, 57, 59, 61, and 98.  See Miller v. Praxair, Inc., 3:05 CV 402 (CFD), 2007 WL 685187, at *1 (D. Conn. March 2, 2007) (redaction appropriate where disclosure would implicitly reveal protected requests for legal advice).

The redactions on documents 13, 20, 21, 32, 39, 40, 42, 46, 48, 49, 50, 56, 58, 62, 74, and 95, are protected by the attorney client privilege where the redactions reflect both Progressive's employees seeking legal advice, and Progressive's in-house counsel providing and/or discussing legal advice.

The redactions on documents 6, 10, 14, 25, 28, 36, 76, 82, 86, and 101 are protected by the attorney-client privilege where such redactions reflect discussions between Progressive employees regarding requests for legal advice and/or memorialize legal advice.  See Bank of Brussels Lambert, supra, 160 F.R.D. at 442; BNP Paribas Mortg. Corp., supra, 2013 WL 2322678, at *11.

The Court finds the redactions on the following documents reflect confidential legal advice from Progressive's in-house

8

counsel to its employees, or reflect discussions of legal advice by Progressive employees, and are therefore protected by the attorney-client privilege: 1, 4, 5, 7, 9, 12, 17, 18, 19, 23, 43, 44, 52, 55, 63, 65, 73, 93, 102, 104, and 105. See In re Cnty of Erie, 473 F.3d 413, 420 (2d Cir. 2007); see also SCM Corp. v. Xerox Corp., 70 F.R.D. 508, 519 (D. Conn. 1976) (string citation omitted) ("A privileged communication should not lose its protection if an executive relays legal advice to another who shares responsibility for the subject matter underlying the consultation.").

> b. Work Product and Attorney-Client Privilege

The Court finds the redactions on the following documents reflect protected confidential legal advice and/or work product, and are therefore protected from disclosure: 11, 27[2], 30, 60, 64, 75, 96, 97, and 99.

> c. Communications with Lobbyists/Counsel[3]

The Court finds the redactions on the following documents are protected by the attorney-client privilege because they either reflect confidential requests for legal advice from Progressive to its attorney-lobbyists, or reflect the attorney-lobbyists providing confidential legal advice, such as the

---

[2] The Court finds that only points 5-8 on document 27 are protected work-product. Points 1-4 reflect updates on lobbying and/or public relations activities and are not protected. See P. & B. Marina, supra, 136 F.R.D. at 59. **Therefore, Progressive shall produce a version of document 27 in which only points 5-8 are redacted.**

[3] As set forth in this Court's ruling on the motions to quash and/or for protective order, the common interest doctrine is applicable to communications  between the IAC's attorneys, Progressive, and the IAC's members, that reflect requests for, or the providing of, confidential legal advice.

interpretation and/or analysis of legislation: 2, 51, 54, 68, 77, 80, 85[4], 87, 94, 103, 106.

### 2. Unprotected Redactions

The Court finds that the redactions on document 108 do not seek or provide legal advice, and therefore are not protected by the attorney-client privilege.  Accordingly, Progressive will provide plaintiffs with an unredacted version of document 108.

<u>Communications with lobbyists</u>:

The Court finds that the redactions on the following documents do not seek or provide legal advice.  Additionally, these documents generally do not provide analysis or interpretation of legislation, and are more in the nature of general lobbying updates, progress reports, and summaries of legislative meetings.  <u>See</u> <u>P. & B. Marina</u>, <u>supra</u>, 136 F.R.D. at 59.  To the extent the communications reflect conversations with public officials and offer no analysis, these are likewise unprotected.  Accordingly, the Court finds that the redactions on the following documents are not attorney-client privileged or entitled to work-product protection: 8, 15, 16, 24, 26, 29, 31, 33, 34, 37, 38, 53, 67, 78, 79, 81, 83, 84, 88, 89, 90, 91, 92, 100, 107, 109, and 110.  Accordingly, Progressive will provide plaintiffs with unredacted versions of these documents.

---

[4] The first four paragraphs of document 85 summarize Mr. Kehmna's conversations with Representative O'Connor and are not privileged. Therefore, only paragraphs 5 and 6 of this document should be redacted. **Accordingly, Progressive shall produce a version of document 85 in which only paragraphs 5 and 6 are redacted.**

### 3. Documents 66, 69, 70, 71 and 72

Documents 66, 69, 70, 71 and 72 are entitled "Connecticut Auto", followed by a month and the year 2010.  Progressive seeks to withhold the redacted portions on the basis of attorney-client privilege and work product doctrine.   The redacted portions of the documents relate to "Legislative, Regulatory & Legal" updates.  The faces of the documents do not indicate who prepared them, or for what purpose.  Progressive's privilege log for these documents, except document 66, indicates the redacted portions were prepared by Progressive's legal department.  It is also unclear who received these documents, or if they were distributed outside of Progressive.  As set forth above, the burden of establishing the applicability of the privilege rests with the party invoking it.  In re Grand Jury Proceedings, 219 F.3d at 182.  As to these five (5) documents, the Court finds Progressive has not met its burden of establishing the attorney-client privilege as it is not apparent whether these documents were intended to be, and were in fact, kept confidential, or if they were made for the purpose of providing legal advice.  As to the claim of work product protection, the Court finds that Progressive has likewise failed to meet its burden of demonstrating that these documents remained confidential.  Accordingly, Progressive shall provide to plaintiffs unredacted copies of documents 66, 69, 70, 71, and 72.

## B. Withheld Documents

### 1. *Protected Documents*

The following documents reflect confidential requests for legal advice from Progressive's employees to Progressive's in-house counsel. Additionally, many of the documents withheld are draft documents sent to in-house counsel for legal review, which are protected. See Valente v. Lincoln Nat. Corp., No. 3:09cv693 (MRK), 2010 WL 3522495, at *4 (D. Conn. Sept. 2, 2010) (finding draft of document privileged where it "was sent to counsel with an implicit request to provide feedback and comments about the draft."). Accordingly, the Court finds the following documents protected by the attorney-client privilege: 129, 133, 134, 135, 136, 137, 154, 165, 185, 186, and 187.

The Court finds that the following documents are protected by the attorney-client privilege because they reflect both Progressive's employees seeking legal advice and Progressive's in-house counsel providing and/or discussing legal advice: 124, 126, 130, 184, and 188. See Valente, 2010 WL 3522495, at *4 (privilege attaches to emails providing in-house counsel with factual information and also implicitly or explicitly seeking legal advice).

The Court finds that document 167 reflects work product and confidential legal advice, and is therefore protected.

The Court finds that the following documents are protected by the attorney-client privilege because they either reflect confidential requests for legal advice from Progressive to its

attorney-lobbyists, and/or reflect the attorney-lobbyists
providing confidential legal advice, such as the interpretation
or analysis of legislation: 113, 114, 115, 118, 122, 123, 125,
132, 138, 139, 140, 144, 147, 149, 150, 151, 155, 156, 161, 164,
168, 169, 170, 171, 172, 174, 176, 178, 179, 180, 181, and 183.

### 2. Unprotected Documents

The Court finds that the following documents do not seek or
provide legal advice.  Additionally, these documents generally
do not provide analysis or interpretation of legislation, and
are more in the nature of general lobbying updates, progress
reports, and summaries of legislative meetings.  See P. & B.
Marina, supra, 136 F.R.D. at 59.  To the extent the
communications reflect conversations with public officials and
offer no analysis, these are likewise unprotected.
Accordingly, the Court finds that the following documents cannot
validly claim attorney-client privilege or work-product
protection: 111, 112, 116, 131, 141, 142, 143, 145, 146, 148,
152, 153, 158, 159, 160, 162, 163, 166, 173, 175, 177, 182, and
183. Accordingly, Progressive shall provide plaintiffs with
copies of these documents.

### 3. Documents  117, 119, 120, 121, 127, 128, & 157

Per Progressive's privilege log, documents 120 and 121 are
"[d]raft proposed legislation prepared by counsel Susan
Giacalone sent to client […]."  Document 127 is a "[d]raft
statement sent to in-house counsel for legal advice and
comments."  Document 128 is a "[d]raft reactive media statement

13

sent to in-house counsel for review." Document 157 is a "[d]raft letter from Robert Kehmna sent on behalf of clients with common interest regarding Department of Insurance's proposed guidelines regarding labor rates." Progressive seeks to withhold these documents pursuant to the attorney-client privilege.  Although Progressive represents that these documents were sent to in-house counsel for legal review and approval, or sent by the lobbyist-attorneys to clients, there is no evidence before the Court as to whom these documents were actually sent, and whether they were distributed outside of Progressive or the IAC's members.  Unlike other draft documents provided to the Court for in camera review, these documents are not accompanied by their transmittal email for "context", nor does the privilege log indicate whether such documents were attached to other emails also submitted for review.  The Court therefore concludes that Progressive has not borne its burden of showing that documents 120, 121, 127, 128, and 157 are protected by the attorney-client privilege.

Per Progressive's privilege log, Documents 117 and 119 are emails from IAC's counsel to the IAC members.  Progressive seeks to withhold these emails on the basis of attorney-client privilege.  Unlike the other emails submitted for review, these do not reflect a distribution list, and only show the substance of the email and the email's author.  Again, although Progressive represents that these documents were sent by IAC counsel to the IAC's members, there is no evidence before the

14

Court as to whom these documents were actually sent. Accordingly, the Court therefore concludes that Progressive has not borne its burden of showing that documents 117 and 119 are protected by the attorney-client privilege.  Therefore, Progressive shall produce copies of documents 117, 119-121, 127, 128, and 157.

**IV.  Conclusion**

Based in the foregoing, the Court overrules in part and sustains in part Progressive's assertions of the attorney-client privilege and work product protection.  Progressive shall deliver copies of the unprotected documents to plaintiffs within fourteen (14) days of this order.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 14th day of November, 2013.


_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE

15