```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


A&R BODY SPECIALTY AND          :
COLLISION WORKS, INC.,          :
FAMILY GARAGE, INC. and         :
THE AUTO BODY ASSOCIATION       :
OF CONNECTICUT on Behalf        :
of Themselves and all           :
Others Similarly Situated,      :
                                :
                                :
v.                              :    CIV. NO. 3:07CV929 (WWE)
                                :
PROGRESSIVE CASUALTY            :
INSURANCE COMPANY and           :
PROGRESSIVE DIRECT INSURANCE    :
COMPANY.                        :
```

<u>RULING ON MOTION TO QUASH AND FOR PROTECTIVE ORDER</u>
<u>[Doc. #409]</u>

Non-party Hartford Fire Insurance Company ("The Hartford") moves for an order quashing a subpoena served by plaintiffs, A&R Body Specialty, Family Garage and the Auto Body Association of Connecticut, on behalf of themselves and all others similarly situated, or, in the alternative, moves for a protective order. [Doc. #409]. Plaintiffs oppose this motion. [Doc. #417]. On June 2, 2014, the Court held oral argument on the pending motion to quash. For the reasons articulated below, the motion to quash or, alternatively, for a protective order [Doc. #409] is GRANTED on the current record.

I. **<u>BACKGROUND</u>**

This action is brought by plaintiffs, A&R Body Specialty ("A&R"), Family Garage and the Auto Body Association of Connecticut ("ABAC"), on behalf of themselves and all other

1

licensed auto body repairers in the State of Connecticut who have performed repairs during the class period for any person with automobile insurance from Progressive.  Plaintiffs allege that defendants illegally suppressed labor rates paid to auto body repair shops and illegally steered their insured to a network of preferred body shops it controls under its direct repair program. In Counts I and II, plaintiffs seek recovery under the Connecticut Unfair Trade Practices Act ("CUTPA").  In Count III, plaintiffs seek to recover under the Connecticut Unfair Sales Practice Act and in Count IV, plaintiffs claim tortious interference with business expectancy. [Doc. #172].

Non-party The Hartford has a protracted litigation history with ABAC and A&R that spans over a decade. In 2003, ABAC, A&R and other body shops filed a class action complaint in Connecticut Superior Court, alleging against The Hartford substantively the same claims as those asserted in the present action (hereinafter the "Artie's litigation"). The Artie's litigation resulted in a plaintiffs' verdict of $14.7 million, and an award of $20 million in punitive damages.  The Hartford alleges that in charging the Artie's jury, the parties "hotly disputed whether the auto body repair appraiser's code of ethics [] applied to auto body labor rates." [Doc. #409-1, 2]. Ultimately, the trial court instructed the jury that the appraiser's code of ethics included the determination of labor rates. [Id. at 3]. Following the verdict, and The Hartford's unsuccessful motion for judgment notwithstanding the verdict

("JNOV"), Progressive's former counsel informed The Hartford that it had obtained two letters from the Department of Insurance ("DOI") to the Connecticut Attorney General's Office stating that the appraiser's code of ethics (DOI regulation § 38a-790-8) did not apply to the determination of labor rates (hereinafter these letters are collectively referred to as the "DOI letters"). [Id.].[1] In light of this newly discovered information, The Hartford thereafter moved for reconsideration of its JNOV motion and for sanctions. The trial court denied the motion for reconsideration, but awarded sanctions. The Artie's litigation is now before the Connecticut Supreme Court on appeal.

In September 2013, the ABAC plaintiffs filed a second lawsuit against The Hartford, seeking damages from 2009 forward for the "ongoing, unlawful conduct, for the time period following the November 2009 jury verdict in the Artie's [litigation]" (the "2013 litigation"). [Doc. #409-1, 7]. The Superior Court has stayed discovery in the 2013 litigation, pending a decision in the Artie's appeal.

Here, plaintiffs served The Hartford with a subpoena dated January 10, 2014. The subpoena sets forth five (5) topics for deposition, and requests document production in response to the following requests:

---

[1] The Department of Insurance has since issued an "Insurance Department Bulletin [IC-34 (July 16, 2013)] expressly stating that determination of auto body labor rates is not within the scope of the Code of Ethics[…]" [Doc. #409-1, 7].

3

>Request 1: All documents from 2006 to present relating to Exhibits 1 through 8 hereof of this Schedule B, including, but not limited to, copies and/or drafts of any of these documents, the time and manner in which they were received by the deponent, and communications and discussion and/or meetings regarding said documents and the topics addressed therein.
>
>Request 2: All documents from 2006 to present relating to communications with the Insurance Association of Connecticut ("IAC"), Robert Khemna, and any of the IAC's employees, regarding auto physical damage repair, including but not limited to, the issues of steering, the role of appraisers in writing estimates, the appraiser code of ethics, labor rates for physical damage repair, lack of repair quality by direct repair shops, aftermarket parts, and the Auto Body Association of Connecticut.
>
>Request 3: All documents from 2006 to present relating to communications with any other insurance company regarding the issues of steering, the role of appraisers in writing estimates, the appraiser code of ethics, labor rates for physical damage repair, lack of repair quality by direct repair shops, policies and practices regarding the use of aftermarket parts, and the Auto Body Association of Connecticut.
>
>Request 4: All documents from 2006 to present relating to communications with the Connecticut Department of Insurance, its Commissioner and employees, regarding auto physical damage repair, including but not limited to, the issues of steering, the role of appraisers in writing estimates, the appraiser code of ethics, labor rates for physical damage repair, lack of repair quality by direct repair shops, aftermarket parts, and the Auto Body Association of Connecticut.
>
>Request 5: All documents from 2006 to present relating to communications with the Attorney General's Office regarding auto physical damage repair, including but not limited to, the issues of steering, the role of appraisers in writing estimates, the appraiser code of ethics, labor rates for physical damage repair, lack of repair quality by direct repair shops, aftermarket parts, and the Auto Body Association of Connecticut.

[Doc. #409-2, Ex. A]. The Hartford objects to the entirety of the subpoena and contends that it is nothing more than a fishing

expedition intended to "continue and expand [ABAC's] war against [The Hartford] on yet another front." [Doc. #409-1, 2].

## II.  **LEGAL STANDARD**

Parties may obtain discovery regarding any non-privileged matter that is relevant to the subject matter involved in the pending litigation. Fed. R. Civ. P. 26(b)(1). The information sought need not be admissible at trial as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1).

"Pursuant to Rule 45, any party may serve a subpoena commanding a nonparty 'to attend and testify' or to 'produce designated documents.'" Weinstein v. University of Connecticut, Civ. No. 3:11CV1906(WWE), 2012 WL 3443340, at *2 (D. Conn. Aug. 15, 2012) (quoting Fed. R. Civ. P. 45(a)(1)(A)(iii)). Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b). See Fed. R. Civ. P. 45 Advisory Committee Notes to 1970 Amendment ("the scope of discovery through a subpoena is the same as that applicable to Rule 34 and the other discovery rules.").  Upon timely motion, a Court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies; or subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3)(A)(iii)-(iv).

Notwithstanding the breadth of the discovery rules, the district courts are afforded discretion under Rule 26(c) to issue protective orders limiting the scope of discovery. Dove v.

5

Atlantic Capital Corp., 963 F.2d 15, 19 (2d Cir. 1992) ("The grant and nature of protection is singularly within the discretion of the district court..."). When the party seeking the protective order demonstrates good cause, the court "may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including ... that the disclosure or discovery not be had." Fed. R. Civ. P. 26(c)(1). "The party resisting discovery bears the burden of showing why discovery should be denied." Chamberlain v. Farmington Sav. Bank, 247 F.R.D. 288, 289 (D. Conn. 2007) (citing Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975)).

**III. DISCUSSION**

    A. Law of the Case

As a preliminary matter, plaintiffs assert that the "Court has already ruled that the documents sought are relevant to this litigation and that Plaintiffs' discovery relating to these issues is not an abuse of process." [Doc. #417, 5]. Plaintiffs refer to the Court's November 14, 2013 Order on the Insurance Association of Connecticut's ("IAC") motion to quash. [Doc. #364]. The Hartford argues that the November 14, 2013 Order is not the "law of the case" because, inter alia, the circumstances involving the subpoena at issue here are "significantly different than those before the Court in ruling on the IAC subpoena." [Doc. #421, 4].

6

As Judge Kravitz aptly noted, "[t]he law of the case is an amorphous concept[,]" which, "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent states of the case." Platinum Funding Ser., LLC v. Petco Insulation Co., Inc., No. 3:09cv1133 (MRK), 2011 WL 1743417, at *6 (D. Conn. May 2, 2011)(citing Arizona v. California, 460 U.S. 605, 618 (1983)) (internal quotations omitted). However, "[t]he law of the case doctrine 'does not rigidly bind a court to its former decisions, but is only addressed to its good sense,' and 'is even less binding in the context of interlocutory orders.'" Platinum Funding, 2011 WL 1743417, at *6 (quoting United States v. Brown, 623 F.3d 104, 111 (2d Cir. 2010)).

The Court agrees that it is not "rigidly [bound]" by its November 14, 2013 Order. Unlike the IAC, plaintiffs have a protracted litigation history with The Hartford.  Indeed, and as outlined above, there are matters currently pending before both the Connecticut Supreme Court and a Connecticut Superior Court that directly implicate plaintiff ABAC and The Hartford. This alone differentiates the two subpoenas significantly. Therefore, the Court rejects plaintiffs' argument that the November 14, 2013 Order is presumptively the "law of the case."

B. <u>Merits and Relation to Pending Appeal</u>

In connection with the motion to quash, plaintiffs and The Hartford provided the Court with copies of their respective Connecticut Supreme Court appellate briefs.[2]

An aspect of The Hartford's appeal involves the denial of its motion for reconsideration of the JNOV motion, and the deference that should have been provided to the DOI letters:

> During deliberations, the jury had sent a question to the Court: "[the Code of Ethics regulation] reads in section two, approach of damaged property without prejudice, etc. Our question; Is this to suggest the code of ethics has to do solely with damaged property and not the labor rate, at which is paid?" Over defendant's objection, the court told the jury that the regulation covers all aspects of the appraisal, including labor-rate negotiations. Hartford moved for reconsideration based on the DOI letters to the AG, which had said exactly the opposite but had not been disclosed by Plaintiffs prior to trial. The trial court denied Hartford's motion to reconsider, saying the letters would not have changed its answer to the jury's question or its JNOV decision. The court gave no deference to the DOI Commissioner's construction of his own regulations, believing it was not "an official Department of Insurance interpretation" of the regulation…

[Doc. #409-2, Ex. S]. As a result of the trial court according no deference to the DOI letters, The Hartford contends that the trial court "improperly allowed CUTPA liability based on a 'penumbra' that is inconsistent with the DOI regulation itself." [<u>Id.</u>]. Specifically, and pertinent to the following discussion, The Hartford contends that the trial court "wrongly thought that it owed no deference to the Commissioner's interpretation of his own regulation," and that "[t]he court should have deferred to

---

[2] Oral argument for this appeal is set for the Connecticut Supreme Court's fall term.

8

the DOI's longstanding and consistent interpretation of a regulation that it wrote and enforces." [Id.].[3]

At the June 2, 2014 hearing, the Court pressed plaintiffs as to the relevance of the documents sought. Plaintiffs contend that the DOI letters and subsequent bulletin will be a "central" aspect of Progressive's case, and they therefore seek documents from The Hartford to ascertain how the DOI letters were prepared. Plaintiffs surmise that this information is pertinent as to whether a court will consider the DOI letters and give them any evidentiary weight.[4]

After hearing arguments of counsel, and reviewing the appellate briefs, it is likely that the Connecticut Supreme Court will determine the issue for which plaintiffs seek the information at issue, i.e. the deference that a court should afford the DOI letters. Accordingly, and in light of protracted and continuing litigation between plaintiffs and The Hartford, the Court GRANTS the motion to quash and for protective order on the current record. Should the Connecticut Supreme Court not determine the issue as anticipated, then plaintiffs may re-serve

---

[3] The Hartford refers to the deference the trial court should have accorded the DOI letters.

[4] Plaintiffs further suggested that the making of the DOI letters was "nefarious" because there is a "pipeline" between the insurance lobby and The Hartford and, therefore, the letters are not entitled to any evidentiary weight. In a similar vein, plaintiffs argued that the DOI letters are not "rule making" and therefore are not entitled to any deference.

the subpoena, and The Hartford may re-file its motion to quash and for protective order, if deemed necessary at that time.[5]

### IV. CONCLUSION

Accordingly, the motion to quash and for a protective order is **GRANTED** on the current record.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 9th day of September, 2014.

```
      /s/
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE
```

---

[5] Moreover, to the extent that plaintiffs seek documents from The Hartford to determine whether it had possession of the DOI letters prior to the Artie's litigation verdict, the state trial court has already made findings on this issue. See Doc. #409-2, Ex. O, 10 ("Based on affidavits submitted at the court's request, the court finds that no one at The Hartford had copies of, or was aware of, the two Commissioner Sullivan letters prior to their being provided by the firm of Wiggin & Dana in April/May of 2011. The court also finds that no one at the firm of Robinson & Cole which formerly represented The Hartford in this litigation had copies of or was aware of those two letters prior to May/June of 2011 when Wiggin & Dana made them available."). Moreover, it defies logic that if The Hartford had the DOI letters in its possession prior to the Artie's trial, it did not produce or otherwise make use of them in light of their potential impact on the issues presented there.