```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


A&R BODY SPECIALTY AND              :
COLLISION WORKS, INC.,              :
FAMILY GARAGE, INC. and             :
THE AUTO BODY ASSOCIATION           :
OF CONNECTICUT on Behalf            :
of Themselves and all               :
Others Similarly Situated,          :
                                    :
                                    :
v.                                  :    CIV. NO. 3:07CV929 (WWE)
                                    :
PROGRESSIVE CASUALTY                :
INSURANCE COMPANY and               :
PROGRESSIVE DIRECT INSURANCE        :
COMPANY.                            :
```

RULING ON PLAINTIFFS' MOTION TO COMPEL SUPPLEMENTATION OF
DOCUMENT PRODUCTION [DOC. #434]

Plaintiffs A&R Body Specialty, Family Garage and the Auto Body Association of Connecticut, on behalf of themselves and all others similarly situated ("plaintiffs"), move to compel defendants Progressive Casualty Insurance Company and Progressive Direct Insurance Company ("defendants" or "Progressive") to supplement their document production from July 31, 2011 through the present date. [Doc. #434]. Defendants oppose this motion. [Doc. #455]. For the reasons articulated below, the motion to compel supplementation of document production [Doc. #434], as narrowed by the parties in their joint status report [Doc. #495], is **GRANTED in part and DENIED in part**.

1

**I.   BACKGROUND**

This action is brought by plaintiffs A&R Body Specialty ("A&R"), Family Garage and the Auto Body Association of Connecticut ("ABAC"), on behalf of themselves and all other licensed auto body repairers in the State of Connecticut who have performed repairs during the class period for any person with automobile insurance from Progressive.  Plaintiffs allege that defendants illegally suppressed labor rates paid to auto body repair shops and illegally steered their insureds to a network of preferred body shops Progressive controls under its direct repair program.

On June 2, 2014, the Court held a discovery conference where, among other issues, the parties raised the pending motion to compel supplemental production. On June 20, 2014, the Court ordered that the parties meet and confer for the purposes of discussing a more focused set of document requests. [Doc. #463]. In a subsequent ruling, the Court ordered the parties to provide a joint status report regarding the meet and confer. [Doc. #472]. Since that ruling, the parties have filed four (4) joint status reports concerning the parties' negotiations relating to supplemental production. [Doc. ##474, 484, 488, 495]. The final status report, dated October 23, 2014, indicates that the parties have reached a cooperative solution as to most of the requests, but certain supplemental discovery requests remain in dispute. [Doc. #495]. The Court will address each supplemental

discovery request, as presented in the October 23 joint status report.

## II. LEGAL STANDARD

Rule 26(b)(1) of the Federal Rules of Civil Procedure sets forth the scope and limitations of permissible discovery. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery.  See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991); Morse/Diesel, Inc. v. Fidelity & Deposit Co., 122 F.R.D. 447, 449 (S.D.N.Y. 1988). "The party resisting discovery bears the burden of showing why discovery should be denied." Cole v. Towers Perrin Forster & Crosby, 256 F.R.D. 79, 80 (D. Conn. 2009); see also Vidal v. Metro-North Commuter R. Co., Civil No. 3:12CV248(MPS)(HBF) 2013 WL 1310504, at *1 (D. Conn. March 28, 2013) (citation and internal quotation marks omitted) ("A party resisting discovery has the burden of showing specifically how, despite the broad and liberal construction afforded [by] the federal discovery rules, each [discovery request] is not relevant or how each question is

overly broad, burdensome or oppressive,… submitting affidavits or offering evidence revealing the nature of the burden.").

Rule 26(e) mandates that a party who has responded to an interrogatory, request for production, or request for admission, "must supplement or correct its [] response: in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or as ordered by the court." Fed. R. Civ. P. 26(e)(1)(A)-(B). "Thus, [parties] are under a continuing duty to supplement by providing documents that are responsive to the discovery propounded. The fact that discovery has closed has no bearing on [a][] duty to supplement under Rule 26(e)." McKinney v. Connecticut, 3:06CV2055(WWE)(HBF), 2011 WL 166199, at *2 (D. Conn. Jan. 19, 2011); see also Gorzynski v. JetBlue Airways Corp., No. 03CV774A, 2012 WL 712067, at *3 (W.D.N.Y. March 5, 2012) (citing McKinney, 2011 WL 166199, at *2) ("This duty to supplement discovery continues even after the discovery period has closed.").

### III. DISCUSSION

**1. Plaintiffs' Requests Nos. 5 and 6**

Plaintiffs' Request No. 5 seeks:

Updated Physical Damage Claims policies/practices documents from August 2011 to present including, but not limited to:
- Estimating standards/guidelines
- Shop management/guidelines

4

- Employee management policies/practices related to estimating and Network acquisition such as mandatory training, performance goals, coaching, progressive discipline, performance incentives, etc.

[Doc. #495, 1]. Plaintiffs' Request No. 6 seeks, "Training materials for Physical Damage Claims employees including staff appraisers, Service Center employees, team leaders, branch/Service Center managers and state managers from August 2011 to the present." [Id. at 2]. In response to both of these requests, defendants have agreed to produce updated Physical Damage and Claims Standards from August 2011 to November 1, 2014, but object to producing the other documents requested. Plaintiffs do not agree that November 1, 2014 should be the cutoff date for production where no trial date has been set.

As an initial matter, the Court agrees that November 1, 2014 should not be the arbitrary cut-off for document production in light of Rule 26(e)'s requirement that parties supplement production and where no trial date has been set. However, on the current record, the Court will only require that defendants produce documents up to the date of this ruling. Once a trial date is set, the Court will then set a date for final discovery supplementation, either by agreement of the parties or of its own accord.

Turning next to the substance of plaintiffs' requests, based on the Court's familiarity with the nature of this action,

5

and the broad definition of relevance under Rule 26(b)(1)[1], the Court will require defendants to produce the remainder of the documents sought in light of the allegations in the Second Amended Complaint. [Doc. #172]. Defendants will produce this information within thirty (30) days of this ruling, or as otherwise agreed by the parties.

**2. Plaintiffs' Request No. 10**

Plaintiff's Request No. 10 seeks, "Connecticut estimate/appraisal data in its native form, including repair channel data, from August 2011 to the present." [Doc. #495, 2]. Defendants object to this request, "which seeks supplementation of the same data that is the subject of Plaintiffs' pending Motion for Reconsideration (doc. #472) and Defendants' Memorandum in Opposition (doc. #486)." [Id.].

In light of the Court's ruling on the motion for reconsideration, and the issues related to the first production of the estimate/appraisal data, the Court will not require defendants, at this time, to supplement production of the estimate/appraisal data. If plaintiffs cannot make a showing of steering with the data produced to date, it is unlikely that any additional data will further contribute to plaintiffs' position for class certification. Should this matter proceed to a damages

---

[1] See, e.g., Arroyo v. Dep't of Pub. Safety, Civ. No. 3:11CV268(WWE), 2012 WL 3113139, at *1 (D. Conn. July 31, 2012) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978)) ("Relevance" under Rule 26(b)(1) "has been broadly defined to include 'any matter that bears on, or that reasonably could lead to other matter[s] that could bear on any issue that is or may be in the case.'").

phase, plaintiffs' may renew its request to compel this additional data.

### 3. Plaintiffs' Request No. 11

Plaintiffs' Request No. 11 seeks:

Employee performance evaluations, including job objectives, for each semi-annual and/or annual period from mid-2011 to the present for:
- A representative employee in each of the following positions:
    - CLRU Rep
    - Connecticut Claims Rep/Service Center Rep (inside rep)
    - Connecticut Manager Repair Rep (field appraiser)
- all of the employees in the Email Custodian list below

[Doc. #495, 2]. Defendants have agreed to produce blank or redacted job objectives for the first three categories, but not the Email Custodians. In light of the Court's ruling on the issue of email custodians below, the Court will require defendants to produce blank or redacted job objectives for the email custodians in addition to those defendants have agreed to produce. Defendants will produce this information within thirty (30) days of this ruling, or as otherwise agreed by the parties.

### 4. Email Custodians

Plaintiffs proposed the following email custodians for purposes of supplemental electronically stored information production:

a. All managers to whom Connecticut Physical Damage Claims employees and their managers reported during the period from August 2011 to present, including:

7

- Connecticut Team Leaders/Supervisors
- Connecticut Branch/SC managers
- Connecticut State Manager
- Zone Process Manager
- Zone GM (Rick Sticca)

b. Chris Andreoli (or his replacement in the shop liaison/Network spokesperson role)
c. Lou DeLuca (or his replacement responsible for overseeing estimatic and labor rate guidelines and/or allowances)
d. Custodian of Connecticut governmental affairs/lobbying records

[Doc. #495, 2-3]. After identifying seventeen (17) current Connecticut managers, plaintiffs proposed to limit the above list to twelve managers, including the following eight Connecticut/regional managers and four corporate managers:

1. William Bourgoin – Connecticut Service Center Appraiser Supervisor
2. Frank Diterlizzi – Connecticut Field Appraiser Supervisor
3. Shane W. Nelson – Connecticut Branch Manager
4. Joseph A. Zannino – Connecticut Branch Manager
5. Christopher J. Marinan – Regional Director of Claims Processes
6. Rick J. Sticca – Regional General Manager
7. Chris Andreoli – Corporate Shop Liaison
8. Lou Deluca – Corporate Claims Process Director
9. Manishi Bhatt – Corporate Claim Control
10. Julia Hornack – Corporate Human Resources Control
11. Matt Stokes – Connecticut Branch Manager
12. Timothy A. Furry – Regional Manager of Claims Process

Defendants have objected to this list because it contains employees with the same or similar titles. Defendants also contend that these custodians will lead to duplicative and an overly broad and burdensome production. Defendants propose

limiting email custodians to one Connecticut and one corporate custodian. Plaintiffs rejected this proposal.

The Court finds that defendants' proposal of one Connecticut and one corporate custodian is far too limited to provide the information which plaintiffs seek. Plaintiffs' proposal is reasonable to the Court in the absence of a specific explanation of how the twelve proposed email custodians are duplicative. Moreover, the Court does not want to invite a scenario where the email custodians are so limited that plaintiffs do not receive the information ultimately sought, therefore necessitating additional motion practice to compel supplemental production from additional custodians. Therefore, the email custodians will be limited to the eight Connecticut/regional managers and four corporate managers identified above.

### 5. Search Terms

Finally, the parties have been unable to agree on a focused set of revised search terms for the above-identified e-mail custodians. At the Court's request, the parties submitted their respective proposals for the Court's consideration. Defendants propose fifteen (15) search terms, which they proposed after reviewing the second amended complaint and the relevancy rate of the initial search terms. Plaintiffs propose 119 "revised" search terms, which defendants generally claim are "overbroad, redundant and will return a high percentage of non-relevant documents." Defendants also submit that "many of the new terms

9

proposed are entirely unreasonable, e.g., Profit%, Margin%, Connecticut, CT and Conn." Defendants finally argue that plaintiffs' proposed revised terms increase their burden. Plaintiffs respond that they have attempted to improve the search term list to address defendants' concerns and view defendants' proposals as a mere reduction, not improvement. Plaintiffs further submit that there is no need to diverge from the original search terms, and that if changes must be made, it should only be to improve these terms.

At plaintiffs' request, the Court held a telephone conference on November 13, 2014, to further address the issue of search terms. The Court advised the parties that once it ruled on the issue of email custodians, it would provide the parties with an opportunity to further discuss the issue of search terms. Therefore, the parties shall meet and confer to address narrowed search terms for the above-listed email custodians, reducing the potential for false hits and focusing on the issues in this litigation. Although the Court prefers that the parties formulate their own search terms, if they are unable to agree within thirty (30) days of this ruling, the Court will order the search terms it deems appropriate under the circumstances.[2]

---

[2] Defendants' opposition to plaintiffs' motion to compel supplementation requests the Court to shift the costs of the supplemental production to plaintiffs. In light of the Court ordering the parties to further meet and confer for purposes of narrowing the search terms, and with no specific information before the Court as to the costs of the anticipated supplemental production, the Court declines on the current record to shift the costs of the supplemental production to plaintiffs.

proposed are entirely unreasonable, e.g., Profit%, Margin%, Connecticut, CT and Conn." Defendants finally argue that plaintiffs' proposed revised terms increase their burden. Plaintiffs respond that they have attempted to improve the search term list to address defendants' concerns and view defendants' proposals as a mere reduction, not improvement. Plaintiffs further submit that there is no need to diverge from the original search terms, and that if changes must be made, it should only be to improve these terms.

At plaintiffs' request, the Court held a telephone conference on November 13, 2014, to further address the issue of search terms. The Court advised the parties that once it ruled on the issue of email custodians, it would provide the parties with an opportunity to further discuss the issue of search terms. Therefore, the parties shall meet and confer to address narrowed search terms for the above-listed email custodians, reducing the potential for false hits and focusing on the issues in this litigation. Although the Court prefers that the parties formulate their own search terms, if they are unable to agree within thirty (30) days of this ruling, the Court will order the search terms it deems appropriate under the circumstances.[2]

---

[2] Defendants' opposition to plaintiffs' motion to compel supplementation requests the Court to shift the costs of the supplemental production to plaintiffs. In light of the Court ordering the parties to further meet and confer for purposes of narrowing the search terms, and with no specific information before the Court as to the costs of the anticipated supplemental production, the Court declines on the current record to shift the costs of the supplemental production to plaintiffs.

**IV.    CONCLUSION**

Accordingly, the motion to compel is **GRANTED in part and DENIED in part** [Doc. #434], as articulated above.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

ENTERED at Bridgeport this 19th day of November, 2014.

　　　　　　　　　　　　　　　　_____/s/_____
　　　　　　　　　　　　　　　　HOLLY B. FITZSIMMONS
　　　　　　　　　　　　　　　　UNITED STATES MAGISTRATE JUDGE